**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXPRESS LIEN, INC.** dba *zlien* | **CIVIL ACTION NO.** _____ |
| **Plaintiff** | **JUDGE:** _____ |
| **VERSUS** | **MAG:** _____ |
| **CLEVELAND METROPOLITAN BAR ASSOCIATION;** | **JURY TRIAL DEMANDED** |
| **OHIO STATE BAR ASSOCIATION;** | |
| **OHIO BOARD ON THE UNAUTHORIZED PRACTICE OF LAW;** | |
| **CLEVELAND METROPOLITAN BAR ASSOCAITION UNAUTHORIZED PRACTICE OF LAW COMMITTEE;** | |
| **ALAN ROSCA;** | |
| **DANIEL J. MYERS;** | |
| and | |
| **NICOLE K. WILSON** | |

1

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes plaintiff, Express Lien, Inc. doing business as *zlien* (hereinafter "*zlien*" or "Plaintiff") who submits to this Honorable Court this Complaint, alleging as follows:

### INTRODUCTION AND SUMMARY

1. In one of many recent landmark decisions, the United States Supreme Court affirmed the decision of the United States Court of Appeals for the Fourth Circuit in *North Carolina State Board of Dental Examiners v. Federal Trade Commission*[1]. In this case, the Supreme Court held that a state agency that is controlled by active market participants in a regulated market or occupation must be actively supervised by a politically accountable state official if the agency is to enjoy immunity from federal antitrust laws[2]. It was noted that "[w]hen a state empowers a group of active market participants to decide who can participate in its market, and on what terms, the need for supervision is manifest."[3]

2. Bar associations across the county hoped for a different ruling as State Bar Associations are "state agencies" composed, in prevalent part, of licensed professionals actively participating in the regulated market.

3. Many professional associations were worried enough about the *Dental Examiners* case that they filed amicus curiae briefs with the court. In fact, at least one bar association (North Carolina) argued that a decision upholding the Fourth Circuit's would

---

[1] 135 S. Ct. 1101 (2015) ("Dental Examiners")
[2] *Id* at 1114.
[3] *Id.*

open up the bar to antitrust lawsuits based on its unsupervised regulation of the market for legal services.

4. This argument was rejected. Instead, the Supreme Court determined that an agency composed primarily of market participants is *not* immune from antitrust liability unless its anticompetitive actions are in pursuit of a clearly articulated state policy **and** are actively supervised by the state.

5. Accordingly, unsupervised activities of bar associations, including activities surrounding actions taken against perceived competitors claimed to be engaged in the "unauthorized practice of law" are now fully subject to the reaches of the federal antitrust laws.

6. Plaintiff Express Lien, Inc. dba *zlien*, ("*zlien*" or "Plaintiff") brings this action under federal antitrust laws to challenge and seek recompense from the anticompetitive, exclusionary, and monopolistic conduct of the Ohio State Bar, Cleveland Metropolitan Bar Association, Ohio Board on the Unauthorized Practice of Law, and other actors. Without state-action immunity, the actions of Defendants, as outlined below, violate the Sherman Act, 15 U.S.C. §§ 1 and 2.

7. Plaintiff further brings this action under the Federal Civil Rights Act of 1871 (Title 42, Section 1983) to challenge and seek recompense from Defendants' attempts to infringe upon Plaintiff's first amendment rights.

8. Plaintiff further brings this action under La. R.S. 51:123 *et seq.* and La. R.S. 51:1401 *et seq.* as Defendants' have improperly infringed on Plaintiff's ability to act in commerce in Louisiana, and have engaged in unfair trade practices.

9. Plaintiff *zlien* has been compelled to file this lawsuit because the Defendants

are illegally and unreasonably restricting trade by accusing the Plaintiff of the unauthorized practice of law, improperly demanding that Plaintiff "cease and desist" from conducting its legitimate business practices, attempting to halt Plaintiff's legitimate business practices and disrupt Plaintiff's legitimate business interests, and attempting to silence Plaintiff's Constitutionally protected speech.

10. The Ohio State Bar Association, Cleveland Metropolitan Bar Association, and the Board on the Unauthorized Practice of Law exclude parties from competing in the Relevant Market, notably by threatening investigations and/or proceedings alleging the unauthorized practice of law, despite the fact that the Associations and Board named above are controlled by private individuals who actively participate in the Relevant Market.

## NATURE OF THE ACTION

11. This is a civil action arising under the laws of the United States, specifically under the Sherman Act, 15 U.S.C. §§ 1 and 2 for anticompetitive, exclusionary, and monopolistic conduct, the Federal Civil Rights Act of 1871 (Title 42, Section 1983) for suppression of Constitutionally protected speech, Louisiana state law including the provisions of La. R.S. 51:123 *et seq.,* and 51:1401 for interference with Plaintiff's ability to act in commerce, and Louisiana state law including La. C.C. art 2315 for causing damage to the Plaintiff.

## PARTIES

12. Express Lien, Inc., doing business as *zlien* is a corporation organized under the laws of the State of Louisiana, with its principal place of business at 4819 Prytania St., New Orleans, LA 70115. *zlien* is an accounts receivable and construction

4

payment software platform for parties in the construction vertical, through which those parties can exert and maintain control over their security rights related to construction projects by using automated processes.

13. The Ohio Board on the Unauthorized Practice of Law is established by Rule VII of the Supreme Court rules for the Government of the Bar of Ohio, and consists of 13 members who are appointed to a three-year term by the Supreme Court. Of these members, only 2 are non-attorneys.

14. The Ohio State Bar Association is a voluntary professional association open to those admitted to the practice of law. The objectives of the association are, according to its Constitution, to Advance the science of jurisprudence; Promote improvement of the law and administration of justice; Uphold integrity, honor and courtesy in the legal profession and encourage and enforce adherence to high standards of professional conduct; Take positions on matters of public interest as deemed advisable; Encourage thorough legal education; Cultivate cordial relations among members of the Bar; and Perpetuate the history of the profession and the Association. Notably, the "core purpose" of the association is to "advance the professional interests of members of the Ohio State Bar Association". The Ohio State Bar Association is organized under the laws of the State of Ohio and principally located in Columbus, Ohio.

15. The Cleveland Metropolitan Bar Association is a nonprofit professional organization dedicated to the needs of legal professionals in greater Cleveland, organized under the laws of the State of Ohio and located in Cleveland, Ohio.

16. The Cleveland Metropolitan Bar Association Unauthorized Practice of Law Committee is a committee comprised of members of the Cleveland Metropolitan Bar

Association, formed for the purpose of investigating allegations that "persons not admitted to the practice of law are in fact practicing law" and filing "complaints against such persons with the Board of Commissioners on the Unauthorized Practice of Law of the Ohio Supreme Court seeking an injunction and potential fine for such conduct".

17. Alan Rosca is an individual whom, upon information and belief, is domiciled in the State of Ohio. Mr. Rosca is an attorney, an active Market Participant, and the Chair of the Cleveland Metropolitan Bar Association Unauthorized Practice of Law Committee.

18. Daniel J. Myers is an individual whom, upon information and belief, is domiciled in the State of Ohio. Mr. Myers is an attorney, an active Market Participant, and authorized by the Cleveland Metropolitan Bar Association Unauthorized Practice of Law Committee to prosecute unauthorized practice of law allegations and to further the anticompetitive, exclusionary, and monopolistic conduct of the committee.

19. Nicole K. Wilson is an individual whom, upon information and belief, is domiciled in the State of Ohio. Ms. Wilson is an attorney, an active Market Participant, and authorized by the Cleveland Metropolitan Bar Association Unauthorized Practice of Law Committee to prosecute unauthorized practice of law allegations and to further the anticompetitive, exclusionary, and monopolistic conduct of the committee.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction pursuant to 28 USC § 1331 (actions arising under the laws of the United States), 28 USC § 1337 (actions arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies), 28 USC § 1343 (civil rights). And 15 USC §15 and 26.

21.     This Court has personal jurisdiction over Defendants. Upon information and belief, Defendants have conducted acts of infringing upon the rights of a company within this District; Plaintiff's speech and commercial actions which Defendants' attempt to suppress occur within this District, and Defendants' have attempted to "reach into" this District to regulate and suppress Plaintiff's speech and commercial action. Furthermore, the Defendants have sent letters and emails to the Plaintiffs, and initiated phone calls to the Plaintiffs, with actual or constructive knowledge that the letters, emails, and phone calls were directed at and received in this District.

22.     Venue is proper in this District pursuant to 28 USC § 1391(b)(2). Upon information and belief, Defendants are subject to personal jurisdiction in this District, and the acts complained of herein are attempts to regulate and suppress behavior in this District on Plaintiff's website and software.

**FACTS**

23.     Plaintiff is cloud-based accounts receivable and construction payment software platform for parties in the construction vertical, through which those parties can exert and maintain control over their security rights related to construction projects by using automated processes.

24.     A "software platform" is a program that processes data and performs certain functions, dictated by users and/or algorithms, though the use of a computer.

25.     A "software platform" is "cloud based" when the computer program operates on and within multiple redundant offsite locations available on the Internet, which allows [application software](application software) to be operated using [internet-enabled devices](internet-enabled devices).

26.     Plaintiff transacts business and distributes content through a website..

27. A website is a specific location on the World Wide Web identified by a unique address known as a Universal Resource Locator ("URL"). Plaintiff distributes content and transacts business through the website found at the URL "zlien.com".

28. To express itself, to disseminate information about it's view of the world, to further its business goals, and to provide its customers with information, the plaintiff provides state-by-state informational resources, and publishes a weblog ("blog") through its website.

29. Plaintiff's blog, published under the title "*The Construction Payment Blog"* contains articles in which Plaintiff and plaintiff's employees, officers, and directors, as well as guest commentators, provide information, give commentary, and otherwise make commercial and political speech about laws, cases, judges, legislators, decisions, legislation, markets, and activities.

30. As mentioned in Paragraph 29, the Plaintiff frequently makes politically significant commentary, such as when it posted an article on July 21, 2014, about an Ohio Supreme Court Decision in "Ohio Supreme Court Gets Pay If Paid Decision Wrong, Hurts Subcontractors;" writing, in part, as follows:

> The question the court must necessarily ask is whether the provision is allowed from a public policy standpoint, and **whether such a provision can topple over 200 years of protections given to subcontractors and sub-tiered parties on a construction project.** Unfortunately, the Ohio Supreme Court simply ignored this question, and thereby made a terrible decision that not only harms the state's construction industry, but injects a new level of confusion about the state's principles.[4]

---

[4] Ohio Supreme Court Gets Pay if Paid Decision Wrong, Hurts Subcontractors. Published July 21, 2014, on the Construction Payment Blog. http://www.zlien.com/articles/ohio-supreme-court-gets-pay-paid-decision-wrong-hurts-subcontractors/

31. An aspect of the Plaintiff's software enables construction industry market participants to generate documents using document assembly software.

32. "Document automation," also known as "Document assembly" is defined by Wikipedia as follows:

> [D]esign of systems and workflows that assist in the creation of electronic documents. These include logic-based systems that use segments of pre-existing text and/or data to assemble a new document. This process is increasingly used within certain industries to assemble legal documents, contracts and letters. Document automation systems can also be used to automate all conditional text, variable text, and data contained within a set of documents.[5]

33. Document automation is commonly used in the construction industry. One specific example of how document automation is used to prepare legal documents in the construction industry is through the American Institute of Architects, who provide software to construction industry participants to prepare construction contract documents. These contracts have repeatedly referenced by and interpreted by American state and federal courts with no hesitation, including courts in Ohio.[6]

34. The Plaintiff's software enables users to generate different construction documents through its document assembly features, whereby the documents are completed with the user's information by merging the data provided by the user, into the software, with designated blanks on the document.

---

[5] https://en.wikipedia.org/wiki/Document_automation, quoted on July 9, 2015.
[6] *See, e.g.*, *Tong Da Auto Serv v. Abucar's Universal Designs*, 2011 Ohio Misc. LEXIS 236 (Ohio C.P. June 22, 2011), (court noted that the contract at issue was "not a standard-form AIA contract," alluding to the long history of case law interpreting AIA contract forms in Ohio).

35. The types of documents that can be generated with *zlien's* software include, but are not limited to, preliminary notices, notices of intent to lien, lien waivers, mechanics liens, bond claims, requests for information, requests for bonds, notices of contract, notices of commencement, notices of completion, "Dunning" letters, demand letters, and custom letters.

36. Regardless of the document type in question, the *zlien* software generates the document in the exact same manner.

37. In the construction industry, some documents must be mailed through a certain method, such as through the U.S. Postal Service with certain mailing services like "certified mail with return receipt requested" or "registered mail." Other documents may be delivered electronically, and still other documents may have a filing requirement, which means that the document must be delivered to a recording office.

38. Users of the Plaintiff's software can direct the software to deliver certain documents to certain locations through certain methods, including by email, by postal mail, by electronic recording through an e-recording submitting technology, or by manual recording by sending the document to a recording office through a courier or through postal mail.

39. Some construction documents request that a property be identified with information other than the simple municipal address, and so users of the Plaintiff's software may also obtain property information available within databases such as: CoreLogic, First American Data Tree, Socrata, Dodge, Reed Construction Data, Bidclerk, building permit repositories, state and county databases, and even *zlien's* own proprietary database.

40. Some construction documents need to be signed, and users of the Plaintiff's platform can electronically sign the documents themselves, or can appoint the Plaintiff as an agent to sign the document as a disclosed agent of the user for the limited purpose of signing the document.

41. Defendant has sent letters, emails, and made telephone calls to the Plaintiff accusing Plaintiff of the unauthorized practice of law, and attempting to get Plaintiff to cease it's commercial activities and to refrain from publishing protected speech related to the Relevant market.

42. For example, on September 17, 2013, Defendant Myers contacted the Plaintiff by email stating:

> I wanted to reach out to you to see if Zlien [sic] and yourself would formally agree to refrain from offering any mechanic's lien services (the type currently offered by Zlien [sic] for the preparation and filing of mechanic's liens) for filing in Ohio…Otherwise, I will let you know what the Board of Trustees decides. I do not have any idea as to the time frame for their decision.

43. In another example, on January 29, 2014, Defendant Myers contacted the Plaintiff by email stating:

> I spoke with the committee. They would be agreeable to a resolution of this dispute if you and Zlien [sic] agree that you will not provide your services to contractors in the state of Ohio, i.e. mechanic's lien preparation, mechanic's lien filing, or the preparation or sending of preliminary notices such as Notice of Furnishings and Notices of Commencement within Ohio. Despite the assurances in your email that Zlien [sic] is just softare [sic], that is clearly not the case. The lien that I have seen was prepared by someone named Gretchen at your office…the lien was signed by her, notarized by another attorney who works with Zlien [sic] or your other law firm, and sent by Zlien [sic] directly for filing to the Fiscal Officer in Cuyahoga County, Ohio.  Zlien [sic] does

> prepare and file liens, it clearly did more than provide a form for others to fill out.
>
> In order to resolve this dispute without proceeding further, the committee has informed me that Zlien [sic] would have to agree not to permit the use of its mechanic's lien preparation, service, filing, or other preliminary notice preparation, service, and/or filing in Ohio.

45. These email message attempted to intimidate the Plaintiff into abandoning its commercial activities that competed with the Defendants in the Relevant Market.

46. Communications from the Defendants, which occurred between 2012 and 2015, threatened Plaintiff with an investigation regarding allegations of the unauthorized practice of law in an attempt to intimidate the Plaintiff into abandoning commercial activities compete with Defendants in the Relevant Market.

47. The Defendants threatened its investigation, and made verbal and written demands that the Plaintiff stop its legitimate commercial activities and its protected speech.

48. These threats and verbal demands were without adequate state supervision.

49. These threats and verbal demands were done with reckless and negligent disregard for the truth of the Plaintiff's business and product, and without conducting a reasonable or minimum investigation into the Plaintiff's business and product. Instead, as demonstrated by the quote from Paragraph 44 of this Complaint:

   a) The Defendants incorrectly presumed that because a document was signed by someone (i.e. Gretchen), it was "prepared" by her;

   b) The Defendants incorrectly alleged some type of wrongdoing by having a Louisiana attorney notarize a document signed in Louisiana;

    c)   The Defendants incorrectly alleged some type of wrongdoing by the Plaintiff sending a piece of paper, through Federal Express courier, to an office in Ohio.

50. The Plaintiff declined to stop and did not stop its legitimate and legal commercial activity. Further, the Plaintiff declined to stop and did not stop publishing speech to which the Defendants objected.

51. Simultaneous to the communications from Defendant Myers to the Plaintiff, demanding that Plaintiff discontinue its legitimate speech and commercial activity, Defendant Myers posted a response to a question on LawGuru.com as follows:

> Question:  Where can I get a free Ohio notice of commencement?
>
> Answer:  If you want a free notice of commencement, I am sure they **are available at various document preparation places online.** However, you get what you pay for.[7]
>
> **Emphasis ours.**

52. In this communication to a potential legal client, Defendant Myers acknowledges "document preparation places online." Instead of informing the inquirer that these places are illegal and in violation of the unauthorized practice of law, Defendant Myers provides information to the inquiring party that these companies do exist and can be used, except to indicate simply that "you get what you pay for."

53. Rather than compete in the open marketplace on price and service (i.e. "you get what you pay for"), Defendant Myers took the opportunity to use his position on the

---

[7] See Exhibit A, a screen capture of the web page located at http://www.lawguru.com/legal-questions/ohio-construction-law/free-ohio-notice-commencement-604759713/ as of July 9, 2015.

Defendant Committee to threaten and intimidate the Plaintiff into discontinuing its potential competition with the Defendant Myers.

54. Upon information and belief, the Defendants' "investigation" and subsequent complaint, both of which were an attempt to cause Plaintiff's abandonment of competing in the Relevant Market spearheaded by Daniel J. Myers and Nicole K. Wilson.

55. On June 3, 2015, the Defendant Committee lodged a "complaint" with the Defendant Board on the Unauthorized Practice of Law.

56. The Cleveland Metropolitan Bar Association Unauthorized Practice of Law Committee determined, and Alan Rosca certified, despite only a cursory (if any) enquiry to Plaintiff's business, that probable cause existed to warrant a hearing on the complaint prepared by Daniel J. Myers and Nicole K. Wilson, through which Defendants have attempted to suppress Plaintiff's commercial activity and protected speech.

57. Defendants allege that the providing and publishing of content and information about Ohio law on *zlien's* website and blog, published in Louisiana, constitutes the unauthorized practice of law in an attempt to suppress Plaintiff's commercial activity and protected speech. For example, see ¶ 16 of Defendants' Complaint, attached as Exhibit B, which states that "zlien's [sic] website also provides information interpreting and advising clients on Ohio-specific law (*See* http://www.zlien.com/mechanics-lien/ohio-lien-law-faqs/…)."

58. Defendants allege *falsely* that the Plaintiff "failed and refused to cooperate with Realtor in identifying additional liens filed in Ohio." ¶ 17 of Defendants' Complaint. This is a misrepresentation made by Defendant Myers made with the intent of gaining an unfair advantage over the Plaintiff.

14

59. Defendant Myers is a participant in the Relevant Market in his individual capacity, has made misrepresentations, and has negligently and fraudulently attempted to use the Board on Unauthorized Practice of Law, and the Cleveland Metropolitan Bar Association Unauthorized Practice of Law Committee to further his own personal interest in limiting competition.

60. Daniel Myers has continued with the attempt to suppress Plaintiff's commercial activity and protected speech by prosecuting an unauthorized practice of law claim despite acknowledging competing with businesses like Plaintiff in the marketplace, and without claiming the businesses were engaged in the unauthorized practice of law.

61. The core purpose of the Ohio State Bar Association is to "advance the professional interests of members of the Ohio State Bar Association".

62. The Ohio State Bar Association is composed of participants in the Relevant Market.

63. The Board on Unauthorized Practice of Law is composed of participants in the Relevant Market.

64. The Cleveland Metropolitan Bar Association is composed of participants in the Relevant Market.

65. Cleveland Metropolitan Bar Association Unauthorized Practice of Law Committee is composed of participants in the Relevant Market.

66. Nicole K. Wilson is a participant in the Relevant Market.

67. Alan Rosca is a participant in the Relevant Market.

68. The Ohio State Bar, the Cleveland Bar, the Board on the Unauthorized Practice of Law, and the Unauthorized Practice of Law Committee are not actively

15

supervised by politically accountable officials of the State of Ohio. No politically accountable state official has or exercises the power to review these groups' acts and disapprove those that do not accord with state policy. No politically accountable state official reviews the substance of the State Bar's decisions or has the power to veto or modify particular decisions of the State Bar to ensure they accord with state policy.

69. The Ohio State Bar has a long history of engaging in anticompetitive conduct under the pretext of enforcing the state's "unauthorized practice of law" statutes. For example, Defendants have, for years, engaged in anticompetitive investigations and letter-writing designed to restrict competition.

70. The Defendants have a practice of sending requests that parties engaged in competitive conduct cease that conduct under the threat of unauthorized practice of law investigations or complaints, and pursuant to only a unilateral determination by Defendants that the conduct at issue actually constitutes the "practice of law".

71. The coercive "requests" to stop engaging in competitive behavior are not authorized by statute and not supervised or regulated by a politically accountable state official.

72. The State of Ohio does not have a definition of the "practice of law," and it's definition for the "unauthorized practice of law," is un-constitutionally overbroad and vague, and in violation of the United States Constitution's protections of free speech, as evidenced by the Defendants attempt to interpret the law to include commercial activities and speech clearly not constituting the practice of law, as discussed herein, and to enforce

those interpretations through unsupervised threats, intimidations, and cease and desist demands.

73. The Defendants, by filing a Complaint against Louisiana attorney Seth Smiley for the mere notarization of a document signed in Louisiana, are also illegally and improperly attempting to regulate the practice of law and of notarial instruments within this State.

74. The Defendants, have together, conspired together to engage in the above actions against the Plaintiff.

75. The Defendants, independently and together, have engaged in unfair methods of competition and unfair or deceptive acts or practices in conducting trade and commerce.

76. The Defendants actions have breached the standard of care required by Louisiana C.C. art 2315, and that breach has caused damages.

77. The Defendants actions, including but not limited to the misrepresentation alleged in ¶ 58 of this Complaint, have violated the duties they have under the Ohio Rules of Professional Conduct for attorneys; specifically the Defendants are violating the duties they have to the public and their adversaries, and to the law, and these violations have caused damages to the Plaintiff.

78. The Defendants actions have caused damages to the Plaintiff.

79. Plaintiff makes demand for trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment and relief against Defendants and respectfully requests this Honorable Court:

1. Find that the Defendants have engaged in anticompetitive conduct in violation of the Sherman Act;

2. Find that Defendants have engaged in unfair competition and unfair trade practices;

3. Find that the Defendants have engaged in the suppression of Plaintiff's 1st Amendment rights by attempting to limit or suppress Plaintiff's commercial and political speech.

4. Enter judgment for Plaintiff on all Counts of the Complaint;

5. Find that the Defendants have otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint.

6. Issue permanent injunctive relief against Defendants, and that Defendants, their agents, representative, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with they, be enjoined and restrained from suppressing the commercial activity and speech of Plaintiff.

7. Award the Plaintiff actual damages caused by the Defendants' conduct, as well as any punitive or treble damages afforded by the Sherman Act, the Federal Civil Rights Act, Unfair Trade Practices Acts, and any and all other applicable laws and provisions;

8. That the Court order Defendants to pay Plaintiff both the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action

9.  That the Court grant to Plaintiff such other and additional relief as is just and proper.

Respectfully Submitted:

**WOLFE LAW GROUP**

**/s Seth Smiley**_____
**SETH J. SMILEY (#32693)**
365 Canal St. #1680
New Orleans, LA 70130
Tel. 504.894.9653
Attorney for Express Lien, Inc. dba *zlien*

AND

**ZLIEN**
**SCOTT WOLFE, JR. (#30122)**
**NATHAN L. BUDDE (#32103)**
4819 Prytania St.
New Orleans, LA 70115
Tel. 866.720.5436
In-House Counsel